**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

FRANK D. GROSSE, III

        Plaintiff,

vs.                                                                                      CASE NO. 3:06-cv-682-J-TEM

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

        Defendant.
_____

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated October 20, 2006. (Doc. #11). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

**I. Procedural History**

Plaintiff is a veteran of the conflict in Viet Nam who initially filed for DIB on May 30, 1997. (Tr. 375). Plaintiff claimed a disability onset date of January 21, 1991. (Tr. 375). A hearing was held on June 25, 1998, and Plaintiff appeared and testified before Administrative Law Judge ("ALJ") John D. Thompson, Jr. (Tr. 302). Subsequently, on

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25, Federal Rules of Civil Procedure, Michael J. Astrue is substituted as Defendant herein.

October 27, 1998, the ALJ issued an unfavorable decision. (Tr. 21-29). The Appeals Council denied review of the ALJ's decision. (Tr. 5). Plaintiff filed a complaint in the district court, appealing the decision of the ALJ. On motion by the Commissioner, the district court remanded the case under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) for the ALJ to address what weight he gave Plaintiff's Florida workman's compensation determination, and if appropriate, articulate specific reasons for not assigning great weight to that determination. (Tr. 385).

After remand, a second hearing was held on October 22, 2003. (Tr. 402-12). Plaintiff did not testify but was represented by attorney N. Albert Bacharach. (Tr. 402-12). Plaintiff's application was denied and the Decision of the ALJ dated February 25, 2004 became the final decision of the Commissioner. (Tr. 372-383). Plaintiff now seeks the Court's review of the ALJ's decision. (Doc. #1).

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)[2]; *Crayton v. Callahan*, 120 F. 3d 1217, 1219 (11th Cir. 1997). Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the

---

[2] All references made to 20 C.F.R. will be to the 2006 edition unless otherwise specified.

Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by

substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.")  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

### III. Background Facts

Plaintiff claims an inability to work, beginning on January 21, 1991, due to a back injury he sustained while trying to lift a heavy object at work. (Tr. 59, 136). After his injury, Plaintiff complained of pain in his lower thoracic and upper lumbar spine. (Tr. 171). Plaintiff also complained of pain that radiated down his left leg and into his left testicle. (Tr. 171). Plaintiff obtained medical treatment from Dr. Howard Hogshead at Orthopaedic Rehabilitation Associates, P.A., in Jacksonville, Florida. (Tr. 171). Dr. Hogshead performed a spinal fusion and decompressive laminectomy on Plaintiff on June 23, 1992. (Tr. 136).

Approximately one month after his surgery, on July 16, 1992, Dr. Hogshead noted

that Plaintiff's wound was "well healed" and that Plaintiff was very "euphoric" about the relief of pain in his leg and left testicle. (Tr. 168-69). On August 3, 1992, Dr. Hogshead noted Plaintiff was walking "considerably more than one mile twice a day" and that he had "no complaints." (Tr. 168). On November 30, 1992, Plaintiff began to complain of pain in his upper back, which he thought was associated with the movement of rods that were placed in his back as part of the spinal fusion procedure. (Tr. 167). However, on October 14, 1992, Dr. Hogshead noted that Plaintiff's x-rays showed "good positioning" of the metal rods and that he was "pleased" with Plaintiff's progress. (Tr. 167).

On March 3, 1993, Dr. Hogshead stated that Plaintiff's x-rays showed "solid healing of the spinal fusion, with no change in position of the hardware [*i.e.,* rods]." (Tr. 165). Dr. Hogshead then found Plaintiff had reached maximum medical improvement ("MMI") and stated he was discharging Plaintiff from his care. (Tr. 165). Dr. Hogshead determined Plaintiff had partial permanent impairment of his whole body and that Plaintiff should not "do a lot of bending or stooping" or lift more than 30 pounds. (Tr. 165). In applying the Minnesota Worker's Compensation Guidelines, Dr. Hogshead calculated that Plaintiff had a fifty-seven and half percent permanent impairment rating. (Tr. 165). Subsequently, in 1993, Plaintiff was declared disabled by his workman's compensation carrier. (Tr. 23, 375).

On January 21, 1994, Plaintiff returned to Dr. Hogshead, complaining of a burning sensation in both legs. (Tr. 164). Plaintiff stated that due to the pain in his legs he had not been very active, and that he was confined to doing housework. (Tr. 164). Dr. Hogshead's impression was that Plaintiff suffered from a "possible neuropathic pain of undetermined etiology," and suggested Plaintiff may need further consultation with a neurologist. (Tr. 164). The results of Plaintiff's subsequent nerve conduction studies were within normal

limits. (Tr. 23, 149).

Plaintiff was last insured for disability purposes in December 1996. (Tr. 376). At the time Plaintiff was last insured he was 46 years old and had passed the General Educational Development ("GED") test. (Tr. 306). Plaintiff has past work experience as a millwright helper as defined in the *Dictionary of Occupational Titles,* which is classified as a heavy semi-skilled job. (Tr. 357, 376).

In his 2004 decision, the ALJ determined Plaintiff had severe impairments, which included status-post decompression L1-L2, spinal fusion T6-L3, history of mild post traumatic stress disorder, and history of situational anxiety. (Doc. #13, p. 2). The ALJ went on to find, however, that these impairments, either alone or in combination, did not meet or equal an impairment listed in Appendix 1, Subpart P. of Regulation No. 4. (Tr. 377). The ALJ then found Plaintiff to have the RFC to lift and carry at least 20 pounds occasionally and 10 pounds frequently, sit, stand and walk for eight hours, so long as he is allowed to alternate positions at least every 30 minutes, and no more than occasional bending, stooping, twisting and crouching. (Tr. 377).

A the 1998 hearing, Plaintiff stated that he lived with his two teenage daughters, and that while his kids were at school he did laundry and dishes, cleaned the toilets, mopped the floors, vacuumed, and watched television. (Tr. 339). Plaintiff further stated that he could walk approximately 440 yards, although Plaintiff maintained that one year following his spinal fusion he was not able to walk that far. (Tr. 342-43).

Next, Vocational Expert ("VE") Ronald Spitznagel testified as to whether Plaintiff could return to his past relevant work as a millwright helper, given a hypothetical individual with Plaintiff's RFC limitations, as described *supra.* (Tr. 358). The VE testified that, since

Plaintiff's past relevant work was a heavy semi-skilled job, Plaintiff would not be able to return to his former kind of work. (Tr. 355, 359). The VE further testified, however, that despite Plaintiff's work restrictions, Plaintiff could adjust to other work that exists in substantial numbers in the national and local economy. (Tr. 359-60). The VE went on to list three different sedentary occupations he felt Plaintiff could perform. They were the occupations of dowel inspector, surveillance system monitor, and a tube operator. (Tr. 359-60). The VE then testified that there are 500 dowel inspector positions, 1,000 surveillance system monitor positions, and 600 tube operator positions available locally, and nationwide, there are 62,000 dowel inspector positions, 40,000 surveillance system monitor positions, and 10,000 tube operator positions available. (Tr. 359-60).

The ALJ relied on the testimony of the VE and determined at Step 5 of the sequential evaluation process that Plaintiff was not disabled under the Regulations because there were significant jobs in the economy that Plaintiff could perform despite his limitations.

### IV. Analysis

**A. Whether Sufficient Weight was Given to the Opinion of Plaintiff's Treating Physician**

Plaintiff's first argument is that the ALJ did not give sufficient weight to the opinion of his treating orthopedic surgeon, Dr. Hogshead, who treated Plaintiff for three years and stated Plaintiff had a permanent impairment rating of fifty-seven and half percent according to the Minnesota Worker's Compensation Guidelines. (Doc. #12, p. 6; Tr. 165). The Court finds this argument unpersuasive because the ALJ articulated reasons for discounting Dr. Hogshead's impairment rating in his 1998 decision. Moreover, as discussed below, the

Court finds the ALJ's reasons for discounting Plaintiff's treating physician's opinion is supported by substantial evidence of record.

Plaintiff correctly notes that controlling weight must be given to the opinion, diagnosis and medical evidence of a treating physician, unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards,* 937 F.2d at 583. If a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give the treating physician's medical opinion controlling weight. 20 C.F.R. § 404.1527(d)(2).

The ALJ, however, may discount a treating physician's opinion regarding a plaintiff's inability to work if the opinion is not supported by objective medical evidence or is wholly conclusory. *Edwards*, 937 F.2d at 583.

Dr. Hogshead was of the opinion that Plaintiff had a "permanent partial impairment of his whole person" and that, for worker's compensation purposes, Plaintiff had a permanent disability rating of fifty-seven and half percent. (Tr. 165).

In the instant case, the ALJ discounted Dr. Hogshead's opinion that Plaintiff had a fifty-seven and half percent disability rating by pointing out inconsistencies within Dr. Hogshead's own notes concerning Plaintiff's progress and improvement after surgery. (Tr. 23). As mentioned *supra*, the ALJ pointed out that following surgery Plaintiff had significant relief from pain and was walking more than one mile per day. (Tr. 23). The ALJ noted that Plaintiff's x-rays showed healing and that Dr. Hogshead found Plaintiff had reached maximum medical improvement. (Tr. 23). The ALJ further noted that Dr. Hogshead stated

8

Plaintiff was no longer a candidate for surgery and that he could care for his personal needs and, as far as work was concerned, Plaintiff should not bend or stoop or lift more than 30 pounds. (Tr. 23).

Moreover, to support his determination that Dr. Hogshead's permanent disability rating of fifty-seven and half percent should be discounted, the ALJ pointed to an examination Plaintiff underwent on June 30, 1993 with another treating physician, Dr. James Dolan, at which Dr. Dolan stated Plaintiff was limited to sedentary work and could lift no more than 20 pounds with restrictions on bending and stooping. (Tr. 24; Tr. 253). The ALJ then referenced the state agency medical consultant's opinion that Plaintiff could perform sedentary work and that Plaintiff's "complaints outweigh the objective evidence." (Tr. 24, 208, 212).

The United States Court of Appeals for the Eleventh Circuit has concluded "good cause" exists to discount a treating physician's opinion when: (1) the opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or, (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004).

The Court finds that the ALJ was entitled to discount the treating physician, Dr. Hogshead's, opinion that Plaintiff had a permanent disability rating of fifty-seven and half percent because this opinion was not supported by objective medical evidence of record. The Court finds that Dr. Hogshead's statement was conclusory and inconsistent with his own notes. Moreover, the Court notes that the work limitations Dr. Hogshead placed on Plaintiff, mentioned *supra*, are commensurate with the ALJ's RFC finding. (*See* Tr. 165).

Accordingly, the Court finds the ALJ properly weighed the opinion of Plaintiff's

9

treating physician, Dr. Hogshead, and applied the proper legal standard when determining not to give Dr. Hogshead's opinion that Plaintiff had a permanent disability rating of fifty-seven and half percent controlling weight.

## B. Plaintiff's Subjective Complaints of Pain

Plaintiff further argues that the ALJ improperly discounted Plaintiff's subjective complaints of pain. For the reasons stated below, the Court is not persuaded by this argument.

When considering Plaintiff's credibility, pain and subjective symptoms alone can be impairments which result in a claimant being disabled. *Marbury v. Sullivan*, 957 F. 2d 837, 839 (11th Cir. 1992). A reviewing court decides whether the Commissioner's findings are consistent with the proper legal standard and are supported by substantial evidence. *Bridges v. Bowen*, 815 F. 2d 622, 624-25 (11th Cir. 1987). 42 U.S.C. § 423 (d)(5)(A) sets forth the conditions by which a claimant's subjective symptoms of pain may establish a disability.

The Eleventh Circuit has interpreted the aforementioned statute to require the Commissioner to consider a claimant's subjective testimony if the claimant has established: (1) evidence of an underlying medical condition; and either (2) objective medical evidence that confirms the severity of the alleged pain or restrictions arising from that condition, or (3) evidence that the objectively determined medical condition is such that it can be reasonably expected to give rise to the claimed pain or restriction. *Foote*, 67 F.3d at 1560-61; *Marbury*, 957 F. 2d at 839; *Holt v. Sullivan*, 921 F. 2d 1221, 1223 (11th Cir. 1991).

While the ALJ must consider a plaintiff's subjective testimony of pain that restricts his/her ability to work, the ALJ may reject the testimony as not credible and such a

determination will be reviewed under the substantial evidence standard. *Marbury*, 957 F.2d at 839. Furthermore, the ALJ's determinations as to the credibility of a plaintiff will not be overturned if, reviewing the entirety of the record, there is substantial evidence supporting a finding of non-credibility. *Foote*, 67 F. 3d at 1562.

In the instant case, the ALJ gave several reasons why he discredited Plaintiff's subjective complaints of pain. First, the ALJ stated that, after Plaintiff's back injury and prior to his 1991 surgery, Plaintiff was able to maintain daily self care and that the only medication he was taking for pain was Motrin (Ibuprofen). (Tr. 25). Second, the ALJ points out that, after his surgery, Plaintiff was given only Tylenol #3 and Percocet, which he discontinued three months after his surgery. (Tr. 25). Conditions amenable to treatment or adequately controlled by medication are generally not considered disabling. *See, e.g., Rose v. Apfel*, 181 F.3d 943, 944 (8th Cir. 1999) (ALJ's finding that the plaintiff was not disabled was supported by the fact that plaintiff's asthma and diabetes were controlled successfully by medication); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984) (finding lack of regular use of potent pain medication militates against allegations of constant and severe pain).

Third, the ALJ notes that Plaintiff's surgery was successful and that Plaintiff was walking more than one mile per day, twice a day. (Tr. 25). Lastly, the ALJ stated that Plaintiff's activities of daily living did not support his contention that he was precluded from all work activity (*i.e.* doing laundry, mopping, floors, vacuuming, etc...). (Tr. 26). *See* 20 C.F.R. § 404.1529(c)(3)(i) (pattern of daily living is an important indicator of the intensity and persistence of symptoms). Moreover, if an ALJ gives at least three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find the ALJ properly

11

discredited the subjective pain testimony. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989).

Accordingly, and for the aforementioned reasons, the Court finds that the ALJ, in the instant case, properly discredited Plaintiff's subjective complaints of pain and that this determination is supported by substantial evidence of record.

**C. Whether the ALJ Erred by Discounting the Fact Plaintiff has Been Awarded Disability Benefits Under a State Worker's Compensation Statute**

The District Court for the Middle District of Florida remanded this case under sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) with instructions for the ALJ to obtain a copy of Plaintiff's worker's compensation decision, address what weight he gave Plaintiff's Florida workman's compensation determination, and if appropriate, articulate specific reasons for not assigning great weight to that determination under *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984). (Tr. 385). Plaintiff's final contention is that, on remand, the ALJ did not give the proper weight to Plaintiff's Florida worker's compensation determination.

The Eleventh Circuit has held that, while the definition of disability under Florida's worker's compensation law and federal social security law differs, the Florida Supreme Court has interpreted the Florida worker's compensation statute in such a way that the Florida statute operates in a similar fashion to the federal regulations, and that the Florida agency's findings in this regard should be given great weight. *Falcon*, 732 F. 2d at 831. In *Falcon*, the court determined, "Because the two disability definitions actually are construed in a like manner, the ALJ erred in not giving great weight to the *Florida agency's finding* of temporary total disability." *Id.* (*emphasis added*).

12

Plaintiff's counsel contends that since Plaintiff is receiving disability benefits under Florida's worker's compensation statute, the ALJ should have given this award great weight. (Doc. #12, p. 8). The record is unclear, however, as to whether Plaintiff has had a formal determination of disability by a government agency or if Plaintiff entered into a settlement agreement with the worker's compensation insurance carrier. (Tr. 406-408).

The ALJ maintains that he told Plaintiff's attorney to submit a copy of Plaintiff's 1991 worker's compensation decision from the Florida's Worker's Compensation Board, and that no such copy was ever delivered. (Tr. 378). The ALJ further stated that he himself attempted to obtain Plaintiff's workman's compensation decision from the State of Florida on three different occasions and that all he ever received were two Notices of Action/Change from the Florida Department of Labor and Employment Security. (Tr. 379).

It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove they suffer from disabling physical or mental functional limitations. 20 C.F.R. § 404.704. The ALJ has a "basic obligation to develop a full and fair record." *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). As the Middle District of Alabama once stated, "While the ALJ is required to fully develop the record before ruling on claims of disability, [he] is under no duty to go to inordinate lengths to develop a claimant's case." *McCray v. Massanari*, 175 F. Supp. 2d 1329, 1340, n.9 (M.D. Ala. 2001 (*internal quotations and citations omitted*). Under the circumstances presented here, the Court finds the ALJ fulfilled his basic obligation to fully develop the record by telling Plaintiff's counsel to submit a copy of Plaintiff's workman's compensation determination and by trying three times to obtain a copy himself.

At the 2003 hearing, Plaintiff's counsel argued that the ALJ should give deference

to an agreed settlement between an insurance company and a worker's compensation claimant. (Tr. 408). In support thereof, Plaintiff's counsel stated that, since workers compensation cases are "highly contested and insurance carriers don't like to pay benefits to workers," the adversarial nature of settlement negotiations indicates that a valid disability determination has been made. (Tr. 408). The ALJ was not convinced by this argument, and neither is the Court.

The findings of disability by another agency, although not binding on the Commissioner, are entitled to great weight. *Bloodsworth*, 703 F.2d at 1241. Concerning whether the ALJ should have considered Plaintiff's worker's compensation insurance settlement a finding by a government agency, the Court finds that *Dunn v. Comm'r of Soc. Sec.*, which addresses this very issue, is persuasive. Civ. Action No. 6:03-cv-798-J-DAB (M.D. Fla. June 9, 2004) (*unpublished decision*). In *Dunn*, the district court held that a workman's compensation settlement is not a "finding" of an agency regarding a disability determination. *Id*.

As there was no written decision by a government agency regarding Plaintiff's worker's compensation award, there is no opinion or determination to which great weight should be afforded.

Furthermore, it is clear from the ALJ's decision and his extensive discussion of Plaintiff's worker's compensation case and the evidence submitted by Plaintiff that was related to the worker's compensation claim, that the ALJ gave a significant amount of consideration to the worker's compensation evidence when reaching his determination that Plaintiff is not disabled within the meaning of the Social Security Act. Thus, the ALJ did not err by failing to give Plaintiff's Florida worker's compensation award/settlement great weight

under the Eleventh Circuit's holdings in *Bloodsworth v. Heckler* and *Falcon v. Heckler*.

## IV. Conclusion

Review of the record as a whole reveals substantial evidence supports the ALJ's finding of non-disability. Accordingly, for the reasons stated herein, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file. Each party shall bear its own fees and costs.

**DONE AND ORDERED** at Jacksonville, Florida this  28th  day of September, 2007.

*Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:
Counsel of Record
Pro Se Parties (if any)